UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ARTUR PUCHALSKI and TERESA GADOMSKA, *as Executrix of the Estate of* JAN GADOMSKI,

                     Plaintiffs,

          -against-

FM CONSTRUCTION, INC., MARIC MECHANICAL, INC., GERALD MARIC, LINDA ZAHN, and FRANK MARIC,

                     Defendants.
----------------------------------------------------------------X

**OPINION & ORDER**
18-CV-1596-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiffs Arthur Puchalski ("Puchalski") and Jan Gadomski ("Gadomski") brought this action against Defendants FM Construction, Inc. ("FM Construction"), Maric Mechanical, Inc. ("Maric Mechanical"), Gerald Maric, Linda Zahn, and Frank Maric (collectively, "Defendants") alleging breach of contract; breach of a collective bargaining agreement in violation of section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185; violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 203, *et seq.*, the New York Labor Law ("NYLL"), and associated wage orders codified at 12 N.Y.C.R.R. parts 137–43; and national origin discrimination and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (Am. Compl. dated Aug. 23, 2018 ("Am. Compl."), Dkt. No. 25 ¶¶ 2–5, 99–158).

On January 16, 2020, Defendants filed a motion to dismiss. (Defs.' Mot. to Dismiss Pls.' Am. Compl. dated Jan. 16, 2020 ("Defs.' Mot."), Dkt. No. 68). On February 11, 2020, Teresa Gadomska ("Gadomska" or "Plaintiff"), as the executrix of the estate of

Gadomski, sought leave to file a Second Amended Complaint.  (Pl.'s Mot. to Amend the
Compl. dated Feb. 7, 2020 ("Pl.'s Mot."), Dkt. No. 75).

For the reasons stated below, Defendants' motion to dismiss is granted in part
and denied in part.  Plaintiff's motion for leave to file a Second Amended Complaint is
granted in part and denied in part.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

The facts, which the Court accepts as true for the purposes of considering a Rule
12(b)(6) motion to dismiss, *see Laurant v. City of New York*, No. 17-CV-5740, 2019 WL
1364230, at *1 & n.1 (E.D.N.Y. Mar. 26, 2019), *appeal dismissed* (June 17, 2019), are set
forth in the Amended Complaint as follows.

Defendants FM Construction and Maric Mechanical are both construction
businesses incorporated in New York with their principal place of business at 19-53 46th
Street, Astoria, New York.  (Am. Compl. ¶¶ 10–11, 24, 29).  The remaining defendants
and Puchalski are New York residents.  (*Id.* ¶¶ 8, 12–14).  Gadomski was a New York
resident, (*id.* ¶ 9), and Gadomska is a New York resident, (Second Am. Compl. ¶ 8).  FM
Construction and Maric Mechanical are jointly operated and owned by Gerald Maric,
Linda Zahn, and Frank Maric.  (Am. Compl. ¶¶ 15, 82–86).

FM Construction and Maric Mechanical employed Puchalski and Gadomski from
around 2012 through 2017, (*id.* ¶¶ 23, 30, 33).  They "performed labor and services as
steam fitters on New York City Schools and New York City Housing Authority
buildings."  (*Id.* ¶ 23).  As steam fitters they "assemble[d], install[ed] and maintain[ed]
steam and gas pipe systems, replace[d] boilers and water heaters, paint[ed], shovel[ed]
dirt, [and] assembled wood pieces in trenches."  (*Id.* ¶ 40).  They "regularly worked in
excess of 40 hours per week but were only paid at [a] lower, misclassified laborer rate

for every hour they worked." (*Id.* ¶ 28). Puchalski and Gadomski are Polish, while

Gerald Maric, Linda Zahn, and Frank Maric are Croatian. (*Id.* ¶ 25).

Puchalski and Gadomski were hired by a project supervisor, first name "Slobo,"

and entered into oral contracts with him, in which they agreed that they would be paid

steamfitter wages and benefits. (*Id.* ¶¶ 31, 34). However, they and "other non-Croat

Slavs were intentionally misclassified as laborers and required to accept the

misclassified lower rate for the work they provided to Defendants as steam fitters." (*Id.*

¶ 35). As a result of this misclassification, they were paid lower wages. (*See id.*). And

furthermore, due to alleged discrimination, Puchalski and Gadomski were forced to join

other unions instead of the steamfitters union—the Enterprise Association of Steam,

Hot Water, Hydraulic, Sprinkler, Pneumatic Tube, Ice Machine and General Pipe Fitters

of New York and Vicinity, Local Union No. 638 ("Local 638"), (Enterprise Association-

Local Union 638 Working Agreement dated Aug. 28, 2017 ("CBA"), attached as Ex. F. to

Defs.' Mot., Dkt. No. 68),—which only individuals of Croatian dissent were permitted to

join. (Am. Compl. ¶¶ 36–37, 55, 63). Puchalski and Gadomski asked to join Local 638

but were told they "would lose their jobs if they persisted in their requests." (*Id.* ¶¶ 63–

65, 71). They believed it would be "futile" to lodge a complaint with Local 638 about

their misclassification. (*Id.* ¶ 68).

Puchalski and Gadomski commenced this action on March 14, 2018, (Compl.

dated Mar. 15, 2018 ("Compl."), Dkt. No. 1), and amended their original Complaint on

August 23, 2018, (Am. Compl.). The Amended Complaint seeks relief for Defendants'

(1) breach of their oral employment contracts; (2) refusal to pay union wages in

violation of the collective bargaining agreement with Local 638 and of LMRA section

301; (3) failure to pay overtime wages, as required by FLSA; and (4) failure to pay

overtime wages under the NYLL and the wage orders promulgated thereunder.  (*Id.* ¶¶ 98–116).  Puchalski and Gadomski also allege claims of (5) national origin discrimination in violation of Title VII; (6) national origin discrimination in violation of the NYSHRL; (7) national origin discrimination in violation of the NYCHRL; (8) constructive discharge in violation of Title VII; (9) constructive discharge in violation of the NYSHRL; and (10) constructive discharge under the NYCHRL.  (*Id.* ¶¶ 118–60).

Following the death of Gadomski on January 31, 2019, (Letters Testamentary dated Apr. 19, 2019, attached to Letter of Appointment of Executor for Jan Gadomski's Estate dated July 22, 2019, Dkt. No. 53), the Court granted his estate's motion to substitute Gadomska, the executrix, as a plaintiff.  (Order dated July 23, 2019; Mot. to Substitute Party dated July 9, 2019, Dkt. No. 50).  Puchalski and Defendants submitted a joint motion for settlement on November 8, 2019, (Joint Mot. for Settlement Between Pl. Artur Puchalski and All Defs. dated Nov. 8, 2019, Dkt. No. 61), which the Court approved on November 25, 2019, (Order dated Nov. 25, 2019).  The Court dismissed Puchalski's claims.  (Stip. of Partial Dismissal with Prejudice dated Dec. 5, 2020 ("Puchalski Stip."), Dkt. No. 64).  Upon the Court's instruction, the Defendants refiled their Motion to Dismiss on January 16, 2020.  (Defs.' Mot.).  On January 17, 2020, Plaintiff and Defendants submitted a revised Rule 16 Discovery Plan, in which the parties agreed the deadline to move to join new parties or amend the pleadings was February 7, 2020.  (Disc. Plan Worksheet dated Jan. 17, 2020, attached as Ex. A to Letter to the Honorable Sanket J. Bulsara, Dkt. No. 72).  On February 6, 2020, Plaintiff, with consent of Defendants, requested an extension of this deadline to February 11, 2020, (Mot. for Extension of Time to Amend Pleadings dated Feb. 6, 2020, Dkt. No. 74), which the Court granted, (Order dated Feb. 7, 2020).  Thereafter, Plaintiff moved to file

4

a Second Amended Complaint on February 11, 2020, the deadline to which the parties had agreed.  (Pl.'s Mot.).

To the extent Defendants seek to dismiss claims asserted only by Puchalski, these portions of Defendants' motion to dismiss are moot in light of the settlement and subsequent dismissal with respect to Puchalski.  (Puchalski Stip.).  Therefore, all that remains for decision on Defendants' motion to dismiss is whether the Amended Complaint fails to state a claim with respect to the First, Second, Sixth and Seventh Claims pursuant to Rule 12(b)(6) and whether the Second, Third, Fourth, Sixth, and Seventh Claims can be maintained against Frank Maric.[1]

## DISCUSSION

I. <u>Defendants' Motion to Dismiss</u>

For a 12(b)(6) motion, the Court must accept the factual allegations set forth in a complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, (2007).  Once the Court construes the facts in the light most favorable to the plaintiff, to avoid dismissal, there must be sufficient facts that allege a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  A complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (alteration in original) (quoting *Twombly*, 550 U.S.

---

[1] Defendants do not challenge the Third and Fourth Claims except as they pertain to Frank Maric, and only Puchalski sought relief under the Fifth, Eighth, Ninth, and Tenth Claims of the Amended Complaint.

at 557).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord* Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote omitted) (citation omitted).  The determination of whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When deciding a 12(b)(6) claim, a district court should not consider factual allegations found in the parties' briefing materials or attached affidavits.  *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("Thus, a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (alteration in original) (citation omitted) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991))).  "In resolving a motion to dismiss, review is generally limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Santana v. Weill Cornell Med. Primary Care*, No. 17-CV-7420, 2018 WL 4636988, at *3 (S.D.N.Y. Sept. 27, 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).

A.    First Claim: Breach of Contract

Plaintiff's first claim for breach of contract alleges FM Construction and Maric Mechanical failed to pay Gadomski wages to which he was entitled under his employment agreement.  (Am. Compl. ¶ 103).[2]

Defendants argue that this contract claim must be dismissed because Plaintiff has not sufficiently identified the oral contract allegedly breached.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss Pls.' Am. Compl. dated Sept. 24, 2018 ("Defs.' Mem. in Supp."), attached to Defs.' Mot., Dkt. No. 68 at 4–5).  According to Defendants, Plaintiff only offers "scant information" and no information about where the contract was executed or who entered into the contract on behalf of Defendants.  (*Id.* at 4).  This argument is without merit.

"Under New York law, 'a plaintiff bringing a breach of contract claim must allege (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.'"  *Naftali v. N.Y. Deferred Exch. Corp.*, No. 15-CV-7152, 2017 WL 4325725, at *7 (E.D.N.Y. Aug. 15, 2017) (quoting *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *7 (E.D.N.Y. May 19, 2014)), *report and recommendation adopted*, 2017 WL 4286260 (Sept. 26, 2017).  "A breach of contract claim will withstand a motion to dismiss only if

---

[2] For their common law claims, the parties rely on New York law without explaining their choice.  As a result, and in the absence of any public policy to the contrary, the Court applies New York law.  *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied."); *e.g.*, *Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law.")

7

plaintiff 'allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.'" *Oberstein v. SunPower Corp.*, No. 07-CV-1155, 2010 WL 1705868, at *5 (E.D.N.Y. Apr. 28, 2010) (alteration in original) (quoting *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, at *2 (2d Cir. 1998)); *see also Goldblatt v. N.Y. Inst. of Tech.*, No. 18-CV-265, 2020 WL 5027150, at *7 (E.D.N.Y. Aug. 25, 2020) (same). "'[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.' If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Rosenbaum v. Premier Sydell, Ltd.*, 240 A.D.2d 556, 557 (2d Dep't 1997) (alteration in original) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981)). And unless barred by the statute of frauds, an oral contract is enforceable. *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 380 (S.D.N.Y. 1998).

Plaintiff has sufficiently alleged the breach of contract claim. Plaintiff states that around May 2012 a project supervisor named Slobo hired Gadomski as a steamfitter. (Am. Compl. ¶ 34). Gadomski entered into an oral contract with Slobo: Gadomski would work as a steamfitter and, in exchange, would be paid at the same rate as other steamfitters. (*Id.*). Plaintiff contends that Gadomski performed under the contract by performing steamfitter work. (*Id.* ¶¶ 41, 101). Defendants allegedly breached the contract by failing to pay Gadomski steamfitter wages. (*Id.* ¶¶ 57, 70, 102–03). Finally, Gadomski suffered damages because he was paid at a lower rate than for which he contracted. (*Id.* ¶ 104). In other words, in addition to alleging the four elements of a breach of contract claim, the Amended Complaint contains sufficient details about the

oral agreement: the place and time of its execution; by an employee authorized by Defendants to enter into such contracts (not disputed by them); and containing the material terms of the employment agreement, namely the work to be done (steamfitting) and the wage rate.  These details, though somewhat sparse, are sufficiently precise to survive a motion to dismiss.  *See, e.g.*, *Fort Prods., Inc v. Men's Med. Clinic, LLC*, No. 15-CV-376, 2016 WL 797577, at *3 (S.D.N.Y. Feb. 23, 2016) ("[T]he Amended Complaint is sufficient because it states that Defendant retained Plaintiff for marketing and advertising services and that Defendant would pay the 'fair and reasonable value' for such services.").  Although the contract claim is styled as one alleging breach of "agreements," the Court interprets the claim as a single claim alleging breach of the May 2012 agreement with Slobo.

Defendants' reliance on *eCommission Solutions, LLC v. CTS Holdings, Inc.*, No. 15-CV-2671, 2017 WL 985881 (S.D.N.Y. Mar. 13, 2017), and *James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296 (E.D.N.Y. 2012), is misplaced.  (Defs.' Reply Mem. of Law in Supp. of their Mot. to Dismiss Pls.' Compl. dated Sept. 24, 2018 ("Defs.' Reply Mem."), Dkt. No. 71 at 2–3).  *eCommission* is inapposite because there the court converted a motion to dismiss into a summary judgment motion, and therefore had no occasion to determine whether the oral agreement could survive a pleading challenge, 2017 WL 985881, at *11 & n.3, and also evaluated the claim under Texas, not New York, law, *id.* at *11–12.  And in *James*, the court found that "plaintiff ha[d] not specifically identified the contract (or contracts) at issue and ha[d] not specified the terms of the agreement that defendant purportedly breached, other than to assert that these certain contracts set forth the commissions and other elements of compensation to be paid to Plaintiff."  849 F. Supp. 2d at 322 (quotations omitted).  Here, however, Plaintiff has

sufficiently identified the contract to survive a motion to dismiss, including by stating the approximate date the contract was formed, the parties present, and the terms of the contract.  (Am. Compl. ¶ 34).

Therefore, Defendants' motion to dismiss with respect to the First Claim is denied.

B.    Second Claim: Third-Party Beneficiary Claim for Union Wages

Plaintiff's second claim is a third-party beneficiary claim for union wages under the collective bargaining agreement between Local 638 and Maric Mechanical ("CBA") and is brought pursuant to LMRA section 301.  (CBA; Am. Compl. ¶¶ 105–09).[3] Defendants raise a series of arguments in an attempt to dismiss this claim—the claim for union wages is actually a claim for prevailing wages and is barred under federal law; Gadomski is not a third-party beneficiary under the CBA; and the claim is barred by the statute of limitations—but none have merit, as explained below.

"Section 301 of the LMRA, among other things, 'governs actions by an employee against an employer for breach of a collective bargaining agreement.'" *Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Dougherty v. Am. Tel. & Tel. Co.,* 902 F.2d 201, 203 (2d. Cir.1990)).  "Suits arising under section 301 include 'those seeking to vindicate uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge.'" *Id.* (quoting

---

[3] Because the Amended Complaint references the CBA and both parties rely on the CBA in arguing the motion to dismiss, the Court can review it in analyzing whether the second claim should be dismissed.  *See Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020) (per curiam) ("We may properly consider the full contents of [a *New York Times*] article because it is incorporated by reference into the SAC. Although the SAC does not cite the specific passage of the article noted above, the SAC nevertheless makes 'a clear, definite and substantial reference to' the article." (quoting *Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 537 (S.D.N.Y. 2018))).

*Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562 (1976)).  And section 301 is the proper vehicle under which to bring CBA-related wage claims.  *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983) ("It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement" under section 301); *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (per curiam) ("The Supreme Court has interpreted section '301 [of the LMRA] as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985))).

Relying on *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), Defendants contend that Plaintiff's claim is barred under federal law.  Defendants misapprehend *Grochowski*.  Plaintiff's claim is based on the LMRA and a CBA between a union and an employer—not a federal construction contract between the employer and a third party which contained representations about the wages to be paid, as was the case in *Grochowski*.  (Am. Compl. ¶¶ 7, 37–38, 48, 106–09; *id.* at 25, ¶ 2); *Grochowski*, 318 F.3d at 83–84.  Where there is a federal construction contract, the Davis-Bacon Act requires employees to be paid a prevailing wage; however, an employee may not sue for non-payment of such wages, because the Davis-Bacon Act contains no private right of action.  *Grochowski*, 318 F.3d at 85–86 ("[T]he present contracts between the defendants and the NYCHA were federally funded and, as such, are governed by the prevailing wage requirements set forth in the [Davis-Bacon Act][.]").  Nor may an employee sue for unpaid wages under state law—say for breach of contract—based on employer's failure to adhere to the federal contract terms.  *Id.* at 86 ("[N]o private right

of action exists under the [Davis-Bacon Act], the plaintiffs['] efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the [Act].").

These principles have no application here.  Plaintiff's second claim is not based on a construction contract, but on the CBA between Local 638 and Defendants.  Nor is it appropriate to analogize the "prevailing wages" at issue *Grochowski* to the "union wages" sought here.  The Davis-Bacon Act is not the LMRA, and the CBA claim is based on an agreement with a union.  Plaintiff's union wage claim is a plain-vanilla LMRA claim that is routinely brought to enforce wage provisions of a CBA.  *See, e.g.*, *Fagundes v. Lane*, No. 12-CV-1634, 2014 WL 1276373, at *3 (E.D.N.Y. Mar. 27, 2014) (holding that a claim for breach of CBA for failure to pay union wages is properly brought under the LMRA).

Defendants then contend that Plaintiff is not an intended third-party beneficiary of the CBA, (Defs.' Mem. in Supp. at 8–11), because as a "non-member[] of Local 638" Gadomski could not have been covered by the CBA, (*id.* at 8).

Plaintiff qualifies as an intended beneficiary of the CBA.  "The federal common law and New York law both look to the Restatement (Second) of Contracts to determine whether a party is a third-party beneficiary of a contract."  *Silverman v. Miranda*, 213 F. Supp. 3d 519, 524 (S.D.N.Y. 2016), *aff'd sub nom. Silverman v. Teamster Loc. 210 Affiliated Health & Ins. Fund*, 725 F. App'x 79 (2d Cir. 2018).  "According to federal common law, a third party must be an intended, rather than an incidental, beneficiary in order to enforce a contract."  *Kinek v. Gulf & W., Inc.*, 720 F. Supp. 275, 280 (S.D.N.Y. 1989), *aff'd as amended on denial of reh'g sub nom. Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503 (2d Cir. 1994).  "The test, which is derived from the Restatement, is whether '[1] recognition of a right to performance in the beneficiary is appropriate to

effectuate the intention of the parties and . . . [2 whether] [sic] the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Id.* (alterations in original) (quoting *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983)).

Here, the CBA applies to both union-member and non-union-member employees like Gadomski. It covers and protects employees based on their occupation, not by whether they are members of the union. (*See* CBA at 9 r. XIV ("The duties of a steamfitter shall be such as are described under the heading 'Duties of a Steamfitter' in the Agreement[.]"), 16–17 ("Duties of a Steamfitter")). The CBA's wage provisions outline the wage rates for "steamfitters" generally, suggesting "steamfitter" is inclusive of union and non-union employees. (*See, e.g.*, *id.* at 4, r. II, § I ("Regular time for a steamfitter . . . shall be paid for at the following rates . . . .")). Thus, employees working as steamfitters—like Gadomski—are covered by the CBA, regardless of union status. It is appropriate, therefore, to conclude that Gadomski was an intended third-party beneficiary of this CBA and can bring a claim under the LMRA. *E.g.*, *cf. Hazen v. W. Union Tel. Co.*, 518 F.2d 766, 769–70 (6th Cir. 1975) ("[A] retired person who is no longer a member of a bargaining unit may either sue at common law under established contract principles or pursue a federal remedy under Section 301 of the [LMRA] for breach of contract.").

Defendants' final argument is that the Second Claim is time-barred. They contend the Second Claim is a "hybrid" section 301 claim and thus is subject to a six-month statute of limitations that expired before the Complaint was filed. (Defs.' Mem. in Supp. at 12–13). This argument is also without merit.

"There are two types of [section] 301 claims.  A pure [section] 301 claim is one that simply alleges that the employer breached the CBA."  *Allen v. United Parcel Serv., Inc.*, 988 F. Supp. 2d 293, 298 (E.D.N.Y. 2013) (citing *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n.7 (1966)).  "Before bringing a pure [section] 301 claim, a party must exhaust the grievance process required by the CBA."  *Id.*  On the other hand, "[a] hybrid [section] 301 claim pairs a claim that the employer breached the CBA with a claim that the union's breach of its duty to fairly represent the employee prevented the employee from exhausting the grievance process."  *Id.*  "The nature of the claim, and not who is sued, determines whether a [section] 301 claim is considered pure or hybrid."  *Id.*

"Contrary to [Defendants'] contention, the current case is most properly characterized as a pure section 301 action[.]"  *Tand*, 324 F. Supp. 2d at 383.  "Although hybrid claims may be found in cases where the union is not a named defendant but where the pleadings allege wrongdoing on the union's behalf, here, the complaint does not indicate that the union breached its duty of fair representation to" Gadomski.  *Id.* (citation omitted).  Indeed, the Amended Complaint states that it was "futile" to involve Local 638's grievance process; it also does not allege wrongdoing on behalf of Local 638.  (Am. Compl. ¶ 68; *see also generally id.*).  The Second Claim is most properly characterized as a pure section 301 claim, and, as a result, a six-year statute of limitations applies.  *Tand*, 324 F. Supp. 2d at 383–84.  Gadomski was hired around May 2012, and the action commenced in March 2018.  (Am. Compl. ¶ 34; Compl.).  Therefore, even if the statute of limitations began to run the moment Gadomski was

hired, time would not have run by the time the original Complaint was filed.[4]  The
Second Claim is not time-barred.[5]

     For the foregoing reasons, the motion to dismiss the Second Claim is denied.

C.     Sixth and Seventh Claims: Discrimination Based on National Origin

     Plaintiff's Sixth and Seventh Claims are for discrimination based on national
origin in violation of the NYSHRL and NYCHRL, respectively, based on Gadomski's
exclusion from Local 638 membership.  Defendants contend that these claims must be
dismissed because Defendants did not prevent Gadomski from joining Local 638, and
he was free to join at any time.  (Defs.' Mem. in Supp. at 14).  The basis for these
contentions is the affidavits of Gerald Maric and Linda Zahn.[6]  (*See id.*).  On a motion to
dismiss, the Court cannot consider such information.  *Friedl*, 210 F.3d at 83 ("[A]
district court errs when it consider[s] affidavits and exhibits submitted by defendants

---

     [4] Defendants also contend that "Plaintiffs' claims still would be barred by virtue
of the CBA vesting in Defendants the discretion to determine the scope of their
steamfitter work."  (Defs.' Mem. in Supp. at 11).  The argument has no merit.  That the
CBA allows Defendants to determine the scope of steamfitter work does not nullify other
rights given to employees, such as the right to be paid steamfitter wages.

     [5] Pure section 301 claims require exhaustion of a CBA's administrative remedies
or grievance process prior to filing.  *Allen*, 988 F. Supp. 2d at 298.  Neither party
considers whether the CBA has a grievance process or discusses whether Gadomski
exhausted such a process.

     [6] Defendants do not argue—and Plaintiff does not explain—how it can be a
violation of either of these statutes for an employer to interfere with an employee's
union membership, as opposed to employment with the employer itself, particularly
when there is no allegation that union membership is controlled by the employer.  Such
an explanation is also lacking with respect to the allegations against the individual
defendants (*infra*), but the Court does make or address arguments not made by
Defendants.

[on a motion to dismiss].” (second alteration in original) (quotation omitted)).

Therefore, the motion to dismiss these claims is denied.[7]

> ### D.   Claims Against Defendant Frank Maric

Plaintiff brings five claims against all Defendants, including Frank Maric

(“Maric”): the Second, Third, Fourth, Sixth, and Seventh Claims.  (Am. Compl. ¶¶ 106–

18, 128–41).  Defendants argue that these claims should be dismissed as to Maric.[8]

(Defs.’ Mem. in Supp. at 19–22).  The motion is granted in part and denied in part.

> #### 1.   The Third and Fourth Claims: FLSA and NYLL

“[I]ndividual liability under the FLSA is premised upon personal responsibility

for making decisions about the conduct of the business that contributed to the violations

of the Act.”  *Mendoza v. Little Luke, Inc.*, No. 14-CV-3416, 2015 WL 998215, at *7

(E.D.N.Y. Mar. 6, 2015) (quoting *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134

(S.D.N.Y. 2014)).  To hold an individual liable under FLSA, that person must be an

“employer.”  *Id.*; *Bravo v. Established Burger One LLC*, No. 12-CV-9044, 2013 WL

5549495, at *5 (S.D.N.Y. Oct. 8, 2013).  The FLSA defines an “employer” as “any person

acting directly or indirectly in the interest of an employer in relation to an employee.”

29 U.S.C. § 203(d); *e.g.*, *Gil v. Frantzis*, No. 17-CV-1520, 2018 WL 4522094, at *5

(E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted in relevant part*, 2018

---

[7] Defendants do not argue—and thereby do not contest—either that Plaintiff, as Gadomski’s wife, cannot prosecute claims on his behalf, or that Gadomski’s claims do not survive his death.  Nor does the Court address whether the section 301 wage claims preempt the NYLL claims, another issue ignored by the parties.

[8] The Court disregards Defendants’ contentions that Maric was not involved in the operational control of the company since 2012, because they are based on factual assertions not contained in the Amended Complaint.  (*See* Defs.’ Mem. in Supp. at 19–20).

WL 4299987 (Sept. 10, 2018).  NYLL uses the same definition.  *Bravo*, 2013 WL 5549495, at *5.

"The 'overarching concern' in determining whether an entity is an 'employer' is whether the entity 'possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case.'"  *Id.* at *6 (quoting *Lopez v. Acme Am. Env't Co.*, No. 12-CV-511, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012)). Under the "economic reality test," a court considers, *inter alia*, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Duchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances[.]"  *Id.* (citation omitted); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422–23 (2d Cir. 2016) (affirming *Herman* as test for individual liability under FLSA).

But a party cannot simply parrot the elements of the economic reality test to establish that an individual is an "employer" under FLSA.  *Ayala v. Looks Great Servs., Inc.,* No. 14-CV-6035, 2016 WL 3541548, at *7 (E.D.N.Y. June 23, 2016) ("[T]he mere recitation that an individual defendant satisfies the elements of the economic reality test, without pleading any factual allegations supporting that claim, is similar to a legal conclusion that does not 'raise a right to relief above the speculative level.' . . .  [T]he Plaintiff must plead facts which make it plausible to infer that the individual defendant had authority to take actions that satisfy some of the factors set forth in the economic reality test." (quoting *Twombly*, 550 U.S. at 555)).

That is all Plaintiff has done here with respect to Maric.  The Amended Complaint only alleges Maric "had operational control of" FM Construction and Maric Mechanical, "had ultimate power to hire and fire employees, including managers and [project] supervisors," supervised project sites, and was an "ultimate boss[]." (Am. Compl. ¶¶ 90–91).  This mimicry of the elements of the economic reality test, devoid of any other facts, is not sufficient to survive dismissal.  These allegations contain no details about Maric's ability to manage conditions of employment or work schedules or his ability to hire or fire employees, including for example, occasions on which he did so. Though such allegations are not required in every case, it would assist in inferring that Maric was Gadomski's employer if Plaintiff alleged that Maric hired or supervised Gadomski himself.  But that is absent here, and the only alleged interaction between Gadomski and Maric is that Maric misled Gadomski about union membership.  (*Id.* ¶ 38).  The other references to Maric—that he prevented Gadomski from joining Local 638, (*id.*), and that he learned that Maric had "connections" at Local 638, (*id.* ¶ 66)— while perhaps pertinent to a discrimination claim (*infra*) are conclusory and add little, if anything, to establish that Maric was Gadomski's employer.

Therefore, the Third and Fourth Claims are dismissed as to Frank Maric.  *See, e.g.*, *Ayala,* 2016 WL 3541548, at *7–8; *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009).

### 2.   The Second Claim: LMRA Section 301

"Courts have . . . emphasized that section 301 litigants and defendants must be party to the contract in question."  *DeRay v. Larson*, 283 F. Supp. 2d 706, 711 (D. Conn. 2003) (citing *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1248–50 (2d Cir. 1970)).  Maric

is not a party to the CBA.  (*See* CBA at 1).  Plaintiff's LMRA claim against him, therefore, must be dismissed.  *See, e.g.*, *DeRay*, 283 F. Supp. 2d at 711.[9]

     3.    The Sixth and Seventh Claims: NYSHRL and NYCHRL

Plaintiff has sufficiently alleged discrimination by Maric under the NYSHRL and NYCHRL.

Individual liability under the NYSHRL also turns on whether the person is an "employer;" however, the test is different from that under FLSA and NYLL.  "A supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'" *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 522 (S.D.N.Y. 2015) (alteration in original) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)).  An individual may be also considered an employer under the NYSHRL if they have "an ownership interest" in the employer.  *Id.* at 521–22.  Separately, "[t]he NYSHRL allows for individual liability where a defendant aided and abetted the unlawful discriminatory acts of others."  *Rodriguez v. Nassau County*, No. 16-CV-2648, 2019 WL 4674766, at *12 (E.D.N.Y. Sept. 25, 2019), *aff'd*, 2020 WL 5948904 (2d Cir. Oct. 8, 2020).

---

[9] Even if Maric were a signatory, that alone would not be sufficient to hold him personally liable for the CBA's obligations.  "When determining whether an individual intended to be held personally liable for unpaid CBA contributions owed pursuant to ERISA obligations, the court looks to principles of state law."  *Jacobson v. Citi-Wide Elec. Corp.*, No. 03-CV-263, 2008 WL 4491374, at *2 (E.D.N.Y. Sept. 30, 2008) (adopting report and recommendation in part) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)).  And "[u]nder New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'"  *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *4 (E.D.N.Y. Mar. 6, 2012) (quoting *Lerner*, 938 F.2d at 5), *report and recommendation adopted*, 2012 WL 1078470 (Mar. 30, 2012).  There is no allegation or basis to infer that Maric intended to be personally liable.

"The NYCHRL provides a broader basis for direct individual liability than the NYSHRL." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). It is unlawful

> [f]or an employer or an employee or agent thereof*,* because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person . . . to discharge from employment such person[] or [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

8 N.Y.C.R.R. § 8-107(1)(a). And "the NYCHRL provides for individual liability of an employee 'regardless of ownership or decisionmaking power.'" *Malena*, 886 F. Supp. 2d at 366 (quoting *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007) ("Section 8-107(1)(a) thus provides for the individual liability of employees regardless of ownership or decision-making power.")).

Plaintiff has adequately stated both a NYSHRL and NYCHRL claim against Maric. The Complaint alleges that Maric himself engaged in discriminatory conduct against Gadomski, by preventing his entry into Local 638, which is sufficient to state a NYCHRL claim. (*See* Am. Compl. ¶ 38). And he is an owner of an entity that has engaged in discrimination, (*id.* at ¶¶ 6, 15, 88), which is sufficient to state a NYSHRL claim.

Therefore, the motion to dismiss the Sixth and Seventh Claims as to Frank Maric is denied.

II.   <u>Plaintiff's Motion to Amend the Complaint</u>

Plaintiff seeks to file a Second Amended Complaint pursuant to Federal Rules of Civil Procedure 15 and 21 to add Edward Puchalski as a new plaintiff and remove Artur Puchalski. (Pl.'s Mot.). In the proposed Second Amended Complaint, Plaintiff and new

party Edward Puchalski assert claims for unpaid wages, unpaid overtime wages, liquidated damages, and attorney's fees and costs under FLSA, NYLL and wage orders codified at 12 N.Y.C.R.R. §§ 137–43, and the common law of the State of New York; national origin discrimination and constructive discharge in violation of NYSHRL and NYCHRL; and failure to pay union wages pursuant to LMRA section 301.  (Decl. of Robert Wisniewski in Supp. of Pls.' Mot. for Leave to Amend the Compl. dated Feb. 7, 2020 ("Wisniewski Decl."), Dkt. No. 75-1 ¶¶ 3(i)–(iii)).  Edward Puchalski asserts claims for national origin discrimination and constructive discharge in violation of Title VII. (*Id.* at ¶ 3(iv)).  And he seeks to relate the proposed Second Amended Complaint back to the date of filing of the original Complaint under Rule 15(c).  (Pl.'s Mot.).

A.    Leave to Amend the Complaint

Rule 15(a)(2) applies to Plaintiff's motion because it is a second amendment. "Rule 15(a)[(2)] . . . provides that in cases where a party cannot amend as a matter of course, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013) (quoting Fed. R. Civ. P. 15(a)(2)).  Such leave shall be freely granted.  *Id.*[10]

Federal Rule of Civil Procedure 16 also bears upon whether the Court should grant leave to amend.  Rule 16 requires the Court to issue a scheduling order in the case, which "must limit the time to join other parties, amend the pleadings, complete

---

[10] Because the motion adds new parties, it is also "governed by Rule 21, which provides that 'the court may at any time, on just terms, add or drop a party,' . . . . However, 'the same standard of liberality applies under either Rule.'"  *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96–97 (S.D.N.Y. 2010) (first quoting Fed. R. Civ. P. 21; next quoting *FTD Corp. v. Banker's Tr. Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997)).

discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A).  "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment).  While Rule 16 sets the schedule for amended pleadings to be filed, Rule 15 provides that leave to amend be "freely give[n]." Fed. R. Civ. P. 15(a)(2).  That is,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  "Delay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." *Duling*, 265 F.R.D. at 97.

Defendants contend that leave to file should not be given because of undue delay, prejudice to them, and the futility of the claims of Edward Puchalski.  (*See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. to File and Serve a Second Am. Compl. and for Relation Back of the Proposed Second Am Compl. dated Feb. 24, 2020 ("Defs.' Mem. in Opp'n"), Dkt. No. 77).  The Court addresses Defendants' arguments in turn.

1.   Undue Delay

Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.

*Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)); *see also* Fed. R. Civ. P. 16(b).  In other words, "the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15."  6A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1522.2 (3d ed. 2020).  That is, even if the Rule 16(b) deadline to file a motion to amend has passed, courts may still grant the motion upon good cause shown.

Defendants contend that "Plaintiffs originally brought this action . . . nearly two years ago, and have unduly delayed in bringing this proposed amendment, resulting in prejudice to Defendants."  (Defs.' Mem. in Opp'n at 5).  They further contend that Edward Puchalski could have been a party of the original Complaint and that Plaintiff fails to explain the delay in adding him to the case.  (*Id.* at 6).  Despite this passage of time, the deadline to file a motion to amend had not passed when the motion was filed. After months of protracted settlement negotiations, the parties all agreed that the deadline to amend was February 11, 2020.  (Mot. for Extension of Time to Amend Pleadings dated Feb. 6, 2020, Dkt. No. 74).  Plaintiff met that deadline by filing the motion on February 11.  (*See generally* Pl.'s Mem. in Supp.; Pl.'s Mot.).  Edward Puchalski's motion was filed by this mutually agreed-upon date.  Therefore, there is no undue delay.  *See, e.g.*, *United Rentals (N. Am.) Inc. v. Conti Enters., Inc.*, No. 15-CV-298, 2015 WL 7257864, at *3 (D. Conn. Nov. 17, 2015) ("United Rentals filed the Motion to Amend on August 27, 2015, which was the deadline for filing motions to amend, as set by the court in its Scheduling Order.  Therefore, there was no undue delay in filing the Motion to Amend." (citation omitted)); *Duffy v. Anitec Image Corp.*, No. 89-CV-

1115, 1991 WL 44834 (N.D.N.Y. Apr. 1, 1991) (finding no undue delay when defendant

moved to amend answer three days before the Rule 16 stipulated deadline for doing so).

     2.   <u>Prejudice</u>

     "Although prejudice to the opposing party . . . has been described as the most

important reason for denying a motion to amend, only *undue* prejudice warrants denial

of leave to amend[.]" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y.

2016) (first alteration in original) (citations and quotations omitted).  "In deciding

whether such prejudice exists, courts evaluate whether the amendment would

'(i) require the opponent to expend significant additional resources to conduct discovery

and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent

the plaintiff from bringing a timely action in another jurisdiction.'"  *Id.* at 454 (quoting

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)) (finding that the

need for "additional, expanded discovery" is insufficient to show prejudice where

discovery was still ongoing and neither a schedule for summary judgment nor a trial

date had been set).  "This inquiry involves a balancing process, weighing any potential

prejudice to the opposing party against the prejudice that the moving party would

experience if the amendment were denied.  The non-moving party bears the burden of

demonstrating that substantial prejudice would result were the proposed amendment to

be granted."  *Id.* at 454 (quotations and citation omitted).

     Defendants have not established prejudice that would warrant denial of Plaintiff's

motion.  Defendants contend that they "have engaged in costly and time-intensive

discovery, resulting in their production of over five thousand pages of documents

relevant to Plaintiffs' claims," (Defs.' Mem. in Opp'n at 7), and they would "have to once

again expend considerable time, effort, and resources toward revisiting their records

and producing materials responsive to Puchalski's allegations," (*id.* at 8).  That

Defendants would have to conduct additional discovery is not unduly prejudicial,

especially when both fact and expert discovery are still ongoing, pursuant to a joint

schedule agreed to by Defendants.  *M.E.S., Inc. v. Safeco Ins. Co.*, No. 10-CV-2798, 2014

WL 2931398, at *3 (E.D.N.Y. June 27, 2014) ("The continuation of discovery is not a

sufficient prejudice to [the defendant] to justify denying [the plaintiff]'s claims.").

Furthermore, while the amendment results in the addition of a new plaintiff, Edward

Puchalski, he is asserting the same claims as Gadomski.  And although there would be

additional damages discovery (based on the hours Edward Puchalski worked), there

would be significant discovery overlap on the discrimination and CBA claims, which are

based on an alleged common pattern of conduct: Defendants' decision to discriminate

against Polish workers and to pay them non-union wages, instead of bargained-for

steamfitter wages.  The Court concludes that the extra work and time attendant to the

discovery from the addition of a new plaintiff—which exists any time a new plaintiff is

added to a case—is insufficient prejudice to warrant denial of the amendment.

     3.   Futility

     "A motion to amend will be considered futile if the Court determines, 'as a matter

of law, that proposed amendments would fail to cure prior deficiencies or to state a

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"  *Charlot v. Ecolab,*

*Inc.*, 97 F. Supp. 3d 57, 61 (E.D.N.Y. 2014) (report and recommendation) (quoting

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)),

*report and recommendation adopted* 97 F. Supp. 3d 40 (2015); *Gayvoronskaya v.*

*Americare, Inc.*, No. 15-CV-6641, 2018 WL 4378162, at *1 (E.D.N.Y. Mar. 26, 2018)

(same).

Defendants make a number of arguments about futility.  (Defs.' Mem. in Opp'n at 2–5).  None have merit.

First, Defendants incorporate the arguments in their motion to dismiss by reference.  (*Id*. at 2–3).  As explained above, the motion to dismiss is denied, except to Defendant Frank Maric, for whom the motion is granted in part and denied in part.

Second, Defendants contend that Edward Puchalski's proposed Title VII claims are futile for failure to exhaust administrative remedies, and as such, the Court lacks subject-matter jurisdiction.  (*Id*. at 3–4).  This exhaustion argument misapprehends the current state of the law.  "Title VII directs that a 'charge . . . shall be filed' with the EEOC 'by or on behalf of a person claiming to be aggrieved' within 180 days 'after the alleged unlawful employment practice occur[s].'"  *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (alterations in original) (quoting 42 U.S.C. § 2000e-5(b), (e)(1)).  "Title VII's charge-filing requirement is not of jurisdictional cast. . . .  Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Id*. at 1850–51.  Thus, exhaustion is an affirmative defense, not a pleading requirement, the burden of which lies with Defendants.  *Quinones v. New York City*, No. 19-CV-5400, 2020 WL 5665142, at *4 (S.D.N.Y. Aug. 17, 2020) (report and recommendation) (same).[11]

Third, Defendants argue that Edward Puchalski's NYSHRL and NYCHRL claims are time-barred.  (Defs.' Mem. in Opp'n at 4–5).  The statutes of limitations for NYSHRL

---

[11] In any event, the Second Amended Complaint states that Edward Puchalski subsequently exhausted his administrative remedies.  He filed a charge of discrimination with the EEOC and, at the time of filing (February 11, 2020), was awaiting his right to sue letter.  (Proposed Second Am. Compl. dated Feb. 5, 2020 ("Second Am. Compl."), attached as Ex. 2 to Dkt. No. 75 ¶ 19; Pl.'s Mem. in Supp. at 4).

and NYCHRL claims are both three years. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (per curiam); *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189, 2020 WL 1172642, at *4 (E.D.N.Y. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1166450 (Mar. 11, 2020). Edward Puchalski alleges he asked to join Local 638 in "late 2016" and was not permitted to do so because of his national origin. (Second Am. Comp. ¶¶ 74, 77). Subsequently, he "repeated his requests to join Local 638 . . . on a number of occasions" but was threatened with termination by FM Construction and the other Defendants for these demands. (*Id.* ¶¶ 75–76). His employment ultimately ended in 2019. (*Id.* ¶ 82). While discovery may be necessary to determine when these other "occasions" were, it is at least plausible that some act of discrimination took place within the limitations period. And as a result, the Court cannot conclude, at this stage, that his claims are barred as a matter of law. These claims are, therefore, not futile.

The Court, therefore, grants Plaintiff leave to amend and to file its Second Amended Complaint.

B.    Relation Back Under Rule 15(c)(1)(C)

The date on which the Second Amended Complaint is deemed filed affects the damages obtainable for Edward Puchalski's wage claims, and he seeks to relate the Second Amended Complaint back to March 14, 2018, when the first Complaint was filed. For the reasons stated below, the relation back is denied. The Second Amended Complaint should be filed by November 23, 2020, and is deemed to relate back only to February 11, 2020, which is the date on which the motion to amend was filed.

An amendment seeking to add a new party relates back to the date of the original pleading only if Rule 15(c)(1)(C) is satisfied. *See Levy v. U.S. Gen. Acct. Off.*, 175 F.3d

254, 255 (2d Cir. 1999) (per curiam); *Charlot*, 97 F. Supp. 3d at 83 (report and recommendation) (collecting cases).  A plaintiff must show (1) that the amendment satisfies Rule 15(c)(1)(B), namely that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), and "within the period provided by Rule 4(m) for serving the summons and complaint;" (2) a defendant "received such notice of the action that it will not be prejudiced in defending on the merits;" and (3) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," *id.* r.15(c)(1)(C).  *See Levy v. U.S. Gen. Acct. Off.*, No. 97-CV-4016, 1998 WL 193191, at *5 (S.D.N.Y. Apr. 22, 1998) ("In order for an amendment which adds a new plaintiff to relate back to the original complaint, the original plaintiff must demonstrate: 1) the new plaintiff's claims arise out of the same transaction or occurrence advanced in the original pleading; 2) the defendant received adequate notice of the new plaintiff's claims so as not to be prejudiced in maintaining a defense on the merits; and 3) the defendant knew or should have known that, but for a mistake concerning the new plaintiff's identity, the action would have been brought on that party's behalf."), *aff'd*, 175 F.3d 254 (2d Cir. 1999); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) ("[T]he relation back of claims by newly added parties is limited to circumstances in which the failure to name the party in the first instance was the product of mistaken identity[.]"); *see also Charlot*, 97 F. Supp. 3d at 84–86 (report and recommendation).

In evaluating relation back under Rule 15(c), "[c]ourts . . . inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading."  *Charlot*, 97 F. Supp. 3d at 71 (report and recommendation)

(quoting 6A Wright & Miller § 1497).  "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."  *Id.* (quoting *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006)).  One component of the notice is the "mistake requirement," which asks "whether the defendant 'knew or should have known that it would have been named as a defendant but for an error.'"  *Dominguez v. City of New York*, No. 10-CV-2620, 2010 WL 3419677, at *2 (E.D.N.Y. Aug. 27, 2010) (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010)).  Because Edward Puchalski cannot satisfy the mistake requirement—*i.e.*, Rule 15(c)(1)(C)'s requirement that Defendants "knew or should have known that the action would have been brought . . . but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C),—the Second Amended Complaint cannot relate back, *e.g.*, *Levy*, 175 F.3d at 254 ("We also agree with the district court, for substantially the reasons it stated, that the claims of the Roemer Appellants in the Levy Amended Complaint do not relate back to Levy's timely complaint.  Levy did not seek to add the Roemer Appellants as plaintiffs because of a mistake, as required by Fed. R. Civ. P. 15(c)[(1)(C)].").

Although Plaintiff contends that courts are divided whether the "mistake" requirement applies to amendments adding a new plaintiff, the Second Circuit has resolved that issue.  *See Levy*, 175 F.3d at 255; *see also Reliance Ins. Co. v. PolyVision Corp.*, 292 F. App'x 106, 108 (2d Cir. 2008) ("[T]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." (alteration in original) (quoting Fed. R. Civ. P. 15 advisory committee's note on 1966 amendments)).

There was no mistake concerning Edward Puchalski, *i.e.*, there is nothing to indicate that Defendants knew or should have known they would be named in a lawsuit to answer for Edward Puchalski's claim.  For example, the failure to previously add him as a plaintiff is neither the result of some legal error, nor is it a case in which an employee with identical claims was mistakenly named as a plaintiff in the original Complaint.  Such a mistake would have put Defendants on notice of Edward Puchalski's claim, because other than the mistaken name, they would have been apprised of another employee having claims similar to Edward Puchalski and Gadomski.  *See, e.g., Allen v. Nat'l R.R. Passenger Corp.*, No. 03-CV-3497, 2004 WL 2830629, at *10 (E.D. Pa. Dec. 7, 2004) (concluding that the mistake requirement was satisfied when new plaintiffs were added and a charge of discrimination was filed with the EEOC on behalf of all plaintiffs, including those to be added, but due to error only a single plaintiff's name was in the original case caption).  But here, there was no mistake in identity or mistaken exclusion of Edward Puchalski.  There was no third employee named in the original pleading who is being substituted for by Edward Puchalski.  Instead, it appears that it was a conscious decision by Edward Puchalski—not a mistake—to avoid entering this lawsuit.  He states that he was trying "tough it out" and not sue.  (Pl.'s Reply Mem. at 5).  And the original Complaint refers to Edward Puchalski, (*see* Compl. ¶ 67 ("Individual Defendant refused to let Plaintiffs, or Puchalski's father, another Polish steam fitter join Local 638.")), but he is not included as a plaintiff, a posture that he maintained for over two years before the motion to amend was filed.  Therefore, Rule 15(c)(1)(C)(ii) is not

met and the Second Amended Complaint cannot relate back under Rule 15(c)(1)(C).[12]

*See, e.g., Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir. 1995) ("Cocchi and Beddingfield had ample time—the time dictated by the relevant statute plus the generous period of time during which the statute was tolled—in which to file their claims.  It is not disputed that Cocchi and Beddingfield were aware of their right to bring these claims.  Nevertheless, they failed to add their names to the complaint until after expiration of the statute of limitations. They have not demonstrated that this failure was due to mistake.").

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  The motion to dismiss is denied except with respect to individual Defendant Frank Maric, for whom the motion to dismiss is granted in part and denied in part.  Plaintiff's motion for leave to file the Second Amended Complaint is granted, subject to the findings of Part I of this opinion, but the Second Amended Complaint does not relate back to the original Complaint.  Plaintiff shall file the Second Amended Complaint by November 23, 2020.  The Clerk of Court shall modify the case caption to remove Artur Puchalski and add Edward Puchalski.

---

[12] Relation back is also not appropriate under Rule 15(c)(1)(A).  "[R]elation back is appropriate when 'the law that provides the applicable statute of limitations allows relation back.'" *Charlot*, 97 F. Supp. 3d at 74 (report and recommendation) (quoting Fed. R. Civ. P. 15(c)(1)(A)).  "Under Rule 15(c)(1)(A), if the applicable statute of limitations is determined by state law . . . courts should assess both the state and federal relation back doctrines and apply whichever law is more generous." *Id.* (alteration in original) (quotation omitted).  Because Plaintiff does not explain which law (state or federal) permits relation back of Edward Puchalski's claims to the original Complaint, the Court does not address this cursory argument, raised for the first time in reply.

SO ORDERED.

/s/ Sanket J. Bulsara November 16, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York